J-S57002-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| L.M. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| C. McG. | : | No. 1093 EDA 2018 |

Appeal from the Order Entered March 13, 2018
In the Court of Common Pleas of Bucks County
Domestic Relations at No(s):  No. 2011-62920-C

BEFORE:   PANELLA, J., PLATT*, J., and STRASSBURGER**, J.

MEMORANDUM BY PANELLA, J.                    **FILED SEPTEMBER 28, 2018**

L.M.[1] appeals from the March 13, 2018 order denying her "petition for special relief to dispose of [her] outstanding request to relocate." We affirm.

We adopt the following factual and procedural history from the trial court's opinions, which are supported by the record. ***See*** Trial Court Opinion ("TCO"), 1/23/18; TCO, 3/16/18; TCO, 6/20/18, at 2-6.

C.McG., a transgender woman, and L.M., a cisgender woman, entered into a romantic relationship in 2005. In April 2010, L.M. gave birth to twins, E.M. and Lu.M. (collectively, "Children"), after being impregnated with

---

* Retired Senior Judge assigned to the Superior Court.

** Retired Senior Judge assigned to the Superior Court.

[1] L.M. is referred to in the trial court's memorandum opinion as L.B., her birth name. As L.M.'s appeal was filed using the surname of her current wife, we will refer to her in that manner.

C.McG.'s banked sperm; both mothers are thus the biological parents of Children.

This matter was initiated in September 2011, following the parties' separation. L.M. filed a petition for custody of Children. Following a hearing in December 2011, the court entered a temporary order awarding the parties shared custody of Children. The order memorialized the parties' agreement to undergo a private custody evaluation by Dr. Stephen R. Cohen, a psychologist. In October 2012, Dr. Cohen submitted a seventy-five page custody evaluation report, developed after extensive interviews of nineteen individuals, including four interviews of the parties, and six psychological tests administered to L.M. and C.McG.

In February 2013, L.M. provided C.McG.with a notice of her proposed relocation to Macungie, Pennsylvania. C.McG. filed a notice of opposition to the relocation and in March 2013, L.M. filed a motion for an expedited custody hearing. In April 2013, the court entered an order approving a stipulation between the parties, providing for shared legal and physical custody of Children in a fourteen-day alternating schedule, permitting L.M. to relocate to Macungie, which is in Lehigh County, and agreeing that all custody exchanges would occur at C.McG.'s residence in Bucks County, and that L.M. would provide all transportation for custody exchanges. L.M. and C.McG. agreed to undergo three co-parenting counseling sessions.

In July 2013, L.M. filed a petition to modify the custody order, seeking primary physical custody of Children because she wished to enroll them in fall

preschool in Macungie and had difficulty transporting Children. On December 19, 2014, C.McG. filed a petition to modify custody, requesting Children reside primarily with her in Bucks County to attend kindergarten in the New Hope-Solebury school district, and opposed another proposed relocation by L.M. from Macungie, Pennsylvania, to Watchung, New Jersey.

In January 2015, L.M. filed an answer to C.McG.'s petition, proposing Children reside primarily with her in Watchung, and argued that the move to Watchung did not qualify as a relocation because it did not significantly impair C.McG.'s ability to exercise her custodial rights. No order was entered on the docket regarding the issue of relocation, but L.M. moved to Watchung, and Children, when staying with L.M., also lived in Watchung.

In July 2017, after a myriad of filings and fourteen custody hearings,[2] the trial court read into the record an order in custody, providing that the parties would share legal custody of Children, and that primary physical custody would be with C.McG. during the school year, and partial physical custody with L.M. on the first and third weekends of each month from Friday at 5:00 p.m. to Sunday at 5:00 p.m. The physical custody would reverse in the summer on the first Sunday after school ended. L.M. was to provide all transportation. The custody order established additional provisions for telephone calls, vacation, holidays, and activities.

---

[2] Hearings were held April 27, 2015; July 6, 2015; October 22, 2015; October 23, 2015; January 7, 2016; May 9, 2016; May 10, 2016; July 21, 2016; July 22, 2016; October 11, 2016; December 23, 2016; January 31, 2017; July 24, 2017; and July 31, 2017.

L.M. filed a motion for reconsideration on August 9, 2017. L.M. timely appealed the custody order to this Court, but, on October 10, 2017, her appeal was quashed. This Court noted *per curiam* that the July order was not final due to the fact that no order had been entered on the docket on a prior petition to relocate and because a written custody order had not been entered onto the docket.[3] **See** No. 2806 EDA 2017, Order, 10/10/17, at 1. The trial court entered a written custody order on September 21, 2017, memorializing the order read in court on July 31, 2017.

On November 6, 2017, C.McG. filed a petition for special relief, seeking a finding of contempt and counsel fees against L.M. On November 8, 2017, L.M. filed a complaint for a writ of mandamus in the Supreme Court of Pennsylvania, requesting that the Court enter an order directing the trial court to dispose of her "request to relocate." The writ was subsequently denied although L.M. was granted leave to file original process. **See** No. 176 MM 2017, Order, 12/11/17. On November 10, 2017, L.M. filed a petition requesting that the trial court recuse itself. On November 28, 2017, following a hearing, the trial court denied L.M.'s request for recusal. L.M. filed a motion for reconsideration, which the trial court later denied.

---

[3] With regard to the outstanding petition for relocation, it remained outstanding because a motion had been filed, but no order disposing of it had been entered on the docket. **See**, **e.g.**, **R.L.P. v. R.F.M.**, 110 A.3d 201, 206 (Pa. Super. 2015) (noting that custody orders must be entered as separate written orders or as separate sections of written opinions).

L.M. filed a notice of appeal to this Court and accompanying statement of errors complained of on appeal, specifically from the trial court's order entered November 28, 2017, which was the denial of L.M.'s request for the trial court to recuse itself. On January 11, 2018, by *per curiam* order, this Court quashed the appeal, as an order denying a motion to recuse is not a final order, and because the petition for relocation remained outstanding. **See** No. 73 EDA 2018, Order, 1/11/18.

On February 1, 2018, the trial court held a hearing on C.McG.'s petition for special relief filed in November 2017. At the conclusion of the hearing, the trial court found L.M. in contempt of the July 31, 2017 custody order and had her committed to Bucks County Correctional Facility for ten days, ordered her to write a letter to the court explaining how she would abide by the order in the future, and to pay counsel fees in the amount of $12,265.75. **See** N.T., 2/1/18, at 83-98.

On February 21, 2018, L.M. filed, in the trial court, a petition for special relief to dispose of her outstanding request to relocate. On March 13, 2018, the trial court issued a written order, entered on the docket, denying her petition as moot, because there was no pending request to relocate. **See** Order, 3/13/18, at 1.

L.M. timely filed a notice of appeal and accompanying statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). Her appeal is now ripe for our review.

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*C.R.F. v. S.E.F.*, 45 A.3d 441, 443 (Pa. Super. 2012) (citation omitted).

[T]he discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

*Ketterer v. Seifert*, 902 A.2d 533, 540 (Pa. Super. 2006) (citation omitted).

With regard to the abuse of discretion standard,

[a]lthough we are given a broad power of review, we are constrained by an abuse of discretion standard when evaluating the court's order. An abuse of discretion is not merely an error of judgment, but if the court's judgment is manifestly unreasonable as shown by the evidence of record, discretion is abused. An abuse of discretion is also made out where it appears from a review of the record that there is no evidence to support the court's findings or that there is a capricious disbelief of evidence.

*M.A.T. v. G.S.T.*, 989 A.2d 11, 18-19 (Pa. Super. 2010) (*en banc*) (citations omitted).

"Our paramount concern in child custody cases is to determine the best interests of the child." *In re K.D.*, 144 A.3d 145, 151 (Pa. Super. 2016)

(citations omitted). "The best-interests standard, decided on a case-by-case basis, considers all factors that legitimately have an effect upon the child's physical, intellectual, moral, and spiritual well[-]being." ***Saintz v. Rinker***, 902 A.2d 509, 512 (Pa. Super. 2006) (citation omitted).

The Child Custody Act sets forth the best interest factors that the trial court must consider. ***See*** 23 Pa.C.S.A. § 5328(a)(1)-(16). ***See also J.R.M. v. J.E.A.***, 33 A.3d 647, 652 (Pa. Super. 2011) (stating trial courts are required to consider "**[a]ll** of the factors listed in section 5328(a) . . . when entering a custody order.")

In L.M.'s first issue, she claims that the trial court committed an error of law and abuse of discretion in failing to analyze the relocation factors of 23 Pa.C.S.A. § 5337(h)(1)-(10) because, as she contends, her request to relocate was still pending. ***See*** Appellant's Brief, at 4-5, 15. L.M. acknowledges that she was already living in New Jersey, and so the procedural requirements of § 5337 were not *per se* triggered; however, she argues that the relocation factors should have been considered in the context of the custody proceeding as Children traveled a significant distance. ***See id***., at 15. We disagree.

As noted, the relocation petition remained "open" because no written order was entered on the docket. The court's order of March 13, 2018, closed the open motion by noting that the issue was moot, as L.M. had already moved to Watchung, had been living there for the past several years, and had herself averred that the move to Watchung was not actually a relocation. We see no

error or abuse of discretion in the court's conclusion that there were no remaining relocation issues to determine.

Next, L.M. claims that the trial court erred and abused its discretion in its analysis of the sixteen custody factors of § 5328(a). She contends that the court's conclusions were unreasonable pursuant to the evidence of the record. *See* Appellant's Brief, at 25. Essentially, L.M. takes issue with certain statements made by the trial court when analyzing the custody factors on the record; L.M. characterizes these statements as unsupported by the record.

The court entered its analysis of the custody factors as follows:

We have to look at the factors mandated by the Supreme Court of Pennsylvania in any custody case, and we'll do so. Which party is more likely to insure the health and safety of the child? The answer is obvious. They both are well-equipped, and have in the past and will in the future, insure the health and safety of both children.

Which party is more likely to encourage and permit frequent and continuing contact between the child and the other party? In my view, any impediments to the relationship are mostly created by [L.M.], who can find nothing positive about anything that [C.McG.] can do. But I think on balance both parents are likely to permit continuing contact between each because they know that it's good for the children.

Is there any abuse committed? Absolutely none. There's no risk of harm to any of these children. Can the parents perform parental duties on behalf of [Lu.M.] and [E.M.]? Of course. Is there extended family available? Yes, on both sides, and they are well-invested in your children.

The next one I find to be especially important. Is there a need for stability and continuity in the child's education and his family life and his community life? Yes. Where is that stability? Now and has been in New Hope. That's where they grew up. That's where they've been attached to. That's where their roots remain.

Watchung only becomes an issue because [L.M.] decided to move there.

Sibling relationships? They have each other. They have a biological sister here in New Hope. Is there a well-reasoned preference of the child? No, of course not, and we wouldn't consider it because of their age and their lack of maturity. I'm sure they would be happy no matter what the circumstances.

Has there been an attempt of one parent to turn the child against the other parent? No, not seriously. None that we can discern. Can [C.McG.] and [L.M.] maintain, on a consistent basis, a loving, nurturing and consistent relationship with the children? Absolutely. And at the same moment they are more than capable of attending to the daily, physical, emotional and developmental and educational needs of the children. Fortunately, there are no special needs.

The proximity of the residences of the parties. It is the crucial issue for this [c]ourt. An hour ride, 40 miles. It's not inconsequential. I think [L.M.] says to herself, I've chosen to live there. No matter what, let's have the children make that trek. As the children get older, it's not easier. Had you stayed in Doylestown and had you moved to the New Hope area, and had you even stayed in Macungie, the prior Order would have been appropriate, but it's no longer appropriate.

Are there abilities to make appropriate child-care arrangements? Yes, strongly. They each have their mother. What [L.M.] sees as a deficit is a plus. There is an au pair available to attend to the needs of the children so [C.McG.] can spend the amount of time that she should with them.

Is there conflict between the parties? Yes, there always is in custody cases. Is this insurmountable? No. They don't like each other. I get it. Is there an inability to cooperate? No. There's an unwillingness to cooperate. Is there a history of drug or alcohol abuse? I haven't heard anything about [L.M.] drinking to excess since, but if it's on either side, it's there. She's the one who had the DUI. She's the one who blacked out. She's the one who had to go to the Caron Foundation. She's the one who imbibed to excess.

The mental and physical condition of the parties. It is a neutral factor. They are both physically and mentally equipped to be able to deal with all the issues presented. There is no history of abuse in any fashion, parent to parent, parent to child.

So these are the mandates I have to consider . . .

N.T., 7/31/17, at 111-115.

L.M., in arguing that the trial court's findings are not supported by the record, raises a myriad of issues regarding the court's findings of fact and credibility determinations including, but not limited to, the court's findings related to where the children grew up and have the most stability, which parent was responsible for impediments to the parties' relationships, factual findings regarding L.M.'s use of alcohol and DUI, and other issues. *See* Appellant's Brief, at 27-39.

As we have observed, the trial court is required to consider all of the § 5328(a) factors in entering a custody order. While the court gives "weighted consideration to those factors which affect the safety of the child" pursuant to 23 Pa.C.S.A. § 5328(a), we have acknowledged that "It is within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case." *M.J.M. v. M.L.G.*, 63 A.3d 331, 339 (Pa. Super. 2013) (citation omitted). Put simply, the amount of weight a court gives any one factor is almost entirely discretionary.

Essentially, L.M. disputes the trial court's findings of fact, determinations of credibility, and the weight given to the voluminous evidence introduced at fourteen hearings. She questions the court's conclusions, inviting us to re-find facts, re-weigh evidence, and re-assess the credibility of witnesses. This we

- 10 -

cannot do. We do not disturb the trial court's findings of fact and determinations regarding the credibility and weight of the evidence absent an abuse of discretion, which we do not find in this case.

Next, L.M. argues that the trial court committed an abuse of discretion and an error of law in relying on a custody evaluation made five years earlier, and not ordering a new evaluation. **See** Appellant's Brief, at 40. She contends that the trial court's emphasis on the evaluation's thoroughness, and the weight put upon it, was inappropriate given the fact that there had been no update or supplement made within six months to one year. **See id**., at 40-41.

In support of this argument, L.M.—impermissibly—cites to a single unpublished decision of this Court, in a child support case, observing in *dicta* that the trial court had not placed much weight upon a custody evaluation performed three years prior to the master's hearing. **See** Appellant's Brief at 4 (citing **Carter v. Carter**, No. 3817 EDA 2016 (Pa. Super., filed 11/30/17) (unpublished memorandum)). L.M. has cited no case law or any legal authority to support her claim, nor developed her argument beyond two paragraphs. Accordingly, we find that L.M. has waived this claim. **See In re Estate of Whitley**, 50 A.3d 203, 209-210 (Pa. Super. 2012) (noting that failure to cite to relevant legal authority constitutes waiver of the claim on appeal).

L.M. combines her next three issues into one. She contends that she was prejudiced by a direct conflict of interest; that her counsel was ineffective; and that the trial court did not respond to the harassment and intimidation of her witnesses by C.McG.'s counsel. **See** Appellant's Brief, at 42.

- 11 -

With regard to the conflict of interest, L.M. avers that she was prejudiced by the fact that one of her prior five attorneys, Melanie Wender, Esquire, who represented her from December 2014 to October 2015, joined the law firm of counsel for C.McG., and Attorney Wender had not given L.M. notice of the potential conflict.[4] **_See id_**. L.M. cites generally to two rules of professional conduct to support her argument, but does not cite to case law to further develop her argument regarding a conflict of interest or the prejudice caused thereby.

With regard to her claim of ineffective assistance, L.M. does not elaborate which of her five attorneys counseled her ineffectively, or provide authority to support the application of a standard applied to the representation of attorneys in criminal matters to a regular custody matter.

With regard to the alleged harassment by counsel, L.M. states that counsel for C.McG. followed L.M. and her wife into the hallway and said, "you better watch yourself," called L.M. a liar on the witness stand, and impermissibly interacted with unnamed witnesses of L.M.'s while they were under oath. **_See id_**., at 42. L.M. does not cite to any authority to support this argument, or indeed, develop any argument beyond this bald statement of fact.

---

[4] L.M. also references a disciplinary board complaint filed in this matter. **_See_** Appellant's Brief, at 43. However, because the complaint is not a part of the certified record, we may not consider it on appeal. **_See Brandon v. Ryder Truck Rental, Inc._**, 34 A.3d 104, 106 n.1 (Pa. Super. 2011).

Here, L.M.'s failure to develop her arguments, cite to pertinent portions of the record to support her claims, or provide legal authority to support her averments, precludes us from review of her issues, and results in the waiver of her claims. **See Estate of Whitley**, 50 A.3d at 209-210.

Finally, L.M. combines her last two issues to argue that the trial court's conclusions were manifestly unreasonable and the product of partiality and bias. Although L.M. identifies comments made by the trial court that she contends show its bias, she does not cite to the pertinent place in the record where either these remarks or objections to the same may be found.[5] Again, L.M. impermissibly cites to a single, unpublished case to define, generally, an abuse of discretion. **See** Appellant's Brief, at 44. L.M. cites no case law regarding bias, recusal, or other relevant legal authority. Accordingly, she has waived this claim. **See Estate of Whitley**, 50 A.3d at 209-210.

Order affirmed.

---

[5] While all appellants are required to make appropriate references to the record, **see** Pa.R.A.P. 2119(c), this lack is particularly egregious considering the voluminous nature of the notes of testimony. **Cf. Philips v. Selig**, 959 A.2d 420, 428 (Pa. Super. 2008) (declining to find waiver where failure to comply with appellate rules has not impeded our ability to review the issues).

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*


*Date: 9/28/2018*